# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |
|---|---|
| Intellectual Ventures II LLC, | |
| Plaintiff, | Civil Action No. 6:15-cv-00060-JRG |
| v. | |
| Great West Casualty Company, | |
| Defendant. | |

# DEFENDANT'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEBRASKA

# TABLE OF CONTENTS

**Page**

I.    Introduction and summary ................................................................................. 1

II.   Description of the case.................................................................................... 1

    A.    IV is headquartered 2,000 miles away, and neither IV nor the patent has
any particular connection to the Eastern District of Texas ................................. 2

    B.    Great West is a Nebraska corporation, and the potential witnesses and
documentary evidence regarding plaintiff's infringement allegations are
overwhelmingly located in Nebraska.................................................................. 2

III.  Argument ........................................................................................................ 5

    A.    The governing standard: transfer is mandated where the transferee venue
(here, the District of Nebraska) is both a proper venue and is clearly more
convenient ........................................................................................................ 5

    B.    The District of Nebraska is a proper venue for this case ....................................... 6

    C.    The District of Nebraska is clearly more convenient................................................ 7

        1.    The private interest factors strongly favor transfer...................................7

            a.    The sources of proof are primarily located in or near the
District of Nebraska ......................................................................... 7

            b.    Important fact witnesses aren't subject to compulsory
process here.................................................................................... 9

            c.    The District of Nebraska is much more convenient for
witnesses than this district ............................................................ 10

            d.    No practical problems arise from transfer .................................... 12

        2.    The public interest factors also weigh in favor of transfer .......................12

            a.    The District of Nebraska has a strong local interest in
adjudicating this case .................................................................... 13

            b.    There are no issues of court congestion; indeed, the
transferee forum is less congested ................................................ 14

            c.    Both districts are familiar with the governing law, and there
is no conflict of foreign law ....................................................... 14

IV.   Conclusion ................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)......................................................................................6

*In re Apple Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) (unpublished) ...................................................10

*Fujitsu Ltd. v. Tellabs, Inc.*,
  639 F. Supp. 2d 761 (E.D. Tex. 2009)........................................................................7

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................................................ *passim*

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009).............................................................6, 10, 12, 13

*In re Morgan Stanley*,
  417 F. App'x 947 (Fed. Cir. 2011) (unpublished) ...................................................12

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)........................................................................6, 10

*Stambler v. Fifth Third Bancorp*,
  No. 2:12-cv-00675-JRG, 2013 WL 6730045 (E.D. Tex. Dec. 18, 2013)...............11

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014).....................................................................6, 12, 15

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008).....................................................................6, 13, 14

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...............................................................5, 6, 10, 11

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ......................................................................5, 13

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010)...........................................................................12

**Statutes**

28 U.S.C. §1400(b) ....................................................................................................6

28 U.S.C. §1404(a) ...................................................................................................................5

## I.    Introduction and summary

This is a patent case. It involves a defendant that is incorporated in the ***District of Nebraska*** and that has its principal place of business in the ***District of Nebraska***. Defendant has no offices in this district. The instrumentality accused of infringement—a website portal, hosted on servers—is located on servers in the ***District of Nebraska***. No server is located in this district. The defendant's employees who designed, develop, operate, and maintain those servers work in the ***District of Nebraska***. None of them work in this district. The documentary evidence about the maintenance and use of the accused website portal is located in the ***District of Nebraska***. The plaintiff isn't a Texas corporation and doesn't maintain its principal—or indeed any—place of business in this district. Its principal place of business is thousands of miles away.

Where, for venue purposes, should this lawsuit be litigated? Notwithstanding the above constellation of facts, none of which point to the Eastern District of Texas, plaintiff's response is "the Eastern District of Texas." That response is wrong. Litigation in this district is convenient only for plaintiff's counsel, which isn't a factor that the law recognizes. Because this litigation could (and should) have been brought in the District of Nebraska, and because the District of Nebraska is a clearly more convenient forum, Great West respectfully asks that this Court direct this case to be transferred there.

## II.    Description of the case

Intellectual Ventures II LLC ("IV") filed this action against Great West Casualty Company ("Great West") on January 20, 2015, alleging infringement of U.S. Patent No. 7,516,177 ("the '177 Patent"). The '177 Patent is entitled "Apparatus for Distributing Content Objects to a Personalized Access Point of a User Over a Network-Based Environment and Method," and IV accuses Great West of infringing it by maintaining a website at http://ssl.gwccnet.com. Dkt. No. 1, at ¶ 19.

1

### A.   IV is headquartered 2,000 miles away, and neither IV nor the patent has any particular connection to the Eastern District of Texas

Plaintiff, Intellectual Ventures II LLC, is a Delaware limited liability company with a principal place of business in Bellevue, Washington. Dkt. No. 1, at ¶ 2. Plaintiff's parent is Intellectual Ventures, Dkt. No. 1, at ¶ 8, and the website of its parent reveals that it maintains several offices on the West Coast and also in countries ranging from Australia to Singapore—but not a single office in Texas, let alone the Eastern District of Texas. Baxter Decl. ¶ 2 (printout from Intellectual Ventures' "Locations" webpage).[1]

IV's asserted '177 Patent similarly has no connection to the Eastern District of Texas. The '177 Patent names as its inventors John R. Knapp and Edward K.E. Snyders, who at the time of the invention resided thousands of miles from here. Dkt. No. 1-1. The '177 patent was originally assigned to HowZone.com, Inc., a corporation then located thousands of miles from here. Baxter Decl. ¶ 4. The patent was prosecuted first by Keith Grzelak of Wells St. John P.S. (located in Spokane, Washington), then by Eric Maschoff of Workman Nydegger (located in Park City, Utah). Baxter Decl. ¶ 4 ('177 patent prosecution history).

### B.   Great West is a Nebraska corporation, and the potential witnesses and documentary evidence regarding plaintiff's infringement allegations are overwhelmingly located in Nebraska

None of the witnesses or documentary evidence about the accused functionality or to Great West's business are located in this district; rather, they are located in or around Great West's headquarters in Nebraska.

Great West is a Nebraska registered corporation maintaining its principal place of business in at 1100 West 29th Street, South Sioux City, Nebraska 68776. Ponder Decl. ¶ 2. South

---

[1] The "Baxter Decl." refers to the Declaration of Alexander Baxter in Support of Great West's Motion to Transfer. The "Ponder Decl." refers to the Declaration of Steven J. Ponder. The "Flannery Decl." refers to the Declaration of Michael R. Flannery. These declarations are being filed concurrently with this motion.

Sioux City lies within the District of Nebraska, and is approximately 90 miles from the Omaha Division courthouse. Baxter Decl. ¶ 6. Of Great West's approximately 794 employees, 58% of them are located in Nebraska; Great West's corporate management works in the South Sioux City headquarters. Ponder Decl. ¶ 4. Great West has never been a Texas registered corporation, has never maintained a principal place of business in Texas, and has no employees who work within the Eastern District of Texas. Ponder Decl. ¶¶ 2, 5.

IV accuses Great West of infringement through the development and maintenance of the ssl.gwccnet.com portal website ("the Great West portal"). Dkt. No. 1, ¶¶ 20-21. The accused Great West portal is hosted on servers located in Great West's Nebraska headquarters, and the Great West employees who designed, developed, operate, and maintain those websites are all located there. Flannery Decl. ¶ 4. Key Great West personnel who have been responsible for designing and overseeing the accused Great West portal are:

- Jim Arends, Executive Vice President of Information Technology, the executive responsible for Information Technology (IT);

- Brian Foote, Supervisor, Systems Development, manager of a team of programmers who provide programming support for Great West systems, including the Great West portal;

- Michael R. Flannery, Manager, Systems Development, manager of all aspects of the development of IT systems for Great West, including the Great West portal.

Flannery Decl. ¶ 5. Each of these key personnel work in Great West's Nebraska headquarters. *Id*. None have ever maintained an office in Texas. *Id*. None of the Great West personnel responsible for developing, maintaining, or servicing the accused Great West portal work in the Eastern District of Texas; to the contrary, they all work in Nebraska. *Id*. ¶¶ 4-5.

Several former Great West employees who were involved in the design and development of the accused Great West portal also reside near the Omaha, Nebraska courthouse.  These former employees include:

- Rich Wright, former Vice President of Systems Development. Mr. Wright was responsible for all activities related to development of IT systems for Great West, including the accused website;

- Jim Daffer, Programmer/Analyst. Mr. Daffer participated in the programming of IT systems for Great West, including the accused website; and

- Steve Caruso, System Analyst III. Mr. Caruso translated business requirements into programming specifications that guided the development of Great West's IT systems, including the accused website.

Flanner Decl. ¶ 6. Mr. Wright now resides in Sioux City, Iowa, across the Missouri river from Great West's Nebraska headquarters, and approximately 85 miles from the Omaha courthouse. *Id.*; Baxter Decl. ¶ 8. Mr. Daffer's last known address was likewise in Sioux City, Iowa, approximately 90 miles from the Omaha courthouse. Flannery Decl. ¶ 6; Baxter Decl. ¶ 9. Mr. Caruso's last known address was in Des Moines, Iowa, approximately 125 miles from the Omaha courthouse. Flannery Decl. ¶ 6; Baxter Decl. ¶ 10.

The physical evidence concerning IV's infringement allegations are likewise located in Nebraska. The servers that implement and host the accused Great West portal are located at Great West's Nebraska headquarters. Flannery Decl. ¶ 7. Those servers have resided at that address for at least the last six years. *Id*. There are no servers anywhere in Texas that implement or host the accused Great West portal. *Id*.

The documentary evidence relating to the maintenance and use of the Great West portal

are also located in Great West's Nebraska headquarters. This includes the source code running the accused Great West portal, as well as specification, design, and development documents. Flannery Decl. ¶ 7. It also includes the testing, bug fix, maintenance, and usage documents. *Id*. None of those records have ever been located in Texas. Flannery Decl. ¶ 8.

Great West has no corporate offices within the Eastern District of Texas. Ponder Decl. ¶ 5. Great West has a branch office in Arlington, Texas, *id*. ¶ 6, but that office lies within the Northern District of Texas. Baxter Decl. ¶ 17. Great West's Arlington office and the personnel working in that office have had no role in the design, development, operation, or maintenance of the accused Great West portal. Flannery Decl. ¶ 9.

## III.    Argument

### A.    The governing standard: transfer is mandated where the transferee venue (here, the District of Nebraska) is both a proper venue and is clearly more convenient

Great West seeks transfer of this case to the District of Nebraska under 28 U.S.C. §1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]." Fifth Circuit Law, as applied by the Federal Circuit in this patent case, governs the transfer analysis. *See In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009). Transfer is mandated where, as here, the movant makes two showings: first, that the claims might have been brought in the proposed transferee district; and second, that the transferee venue is clearly more convenient than the transferor district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13, 315 (5th Cir. 2008).

The second step of the analysis requires the district court to weigh private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory

process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.* The factors aren't exhaustive, and no one factor is dispositive. *Id.*

Although all potentially relevant, the factors aren't of equal weight. In particular, ***where key fact witnesses will be substantially inconvenienced by the location of the litigation, that weights heavily in favor of transfer.*** *E.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198-99 (Fed. Cir. 2009). Similarly, a district that can exercise compulsory process to secure the attendance of those and other witnesses is likely more convenient than a centrally-located district that can't. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

The plaintiff's choice of venue isn't a separate factor to be considered. Instead, the plaintiff's choice to file in a district requires the movant to show the transferee district is clearly more convenient, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008), although it needn't be *far* more convenient. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). If no factors favor the original venue, and several factors favor the transferee forum, the transferee forum is clearly more convenient. *Id.*

### B.     The District of Nebraska is a proper venue for this case

Under 28 U.S.C. §1400(b), patent infringement lawsuits may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Great West is a Nebraska company with its

headquarters in South Sioux City, Nebraska, and the website that IV accuses of infringement was designed and developed in, and is hosted in and operated from, Nebraska. Flannery Decl. ¶¶ 5-8. Accordingly, IV could—and should—have brought this lawsuit in the District of Nebraska.

### C.    The District of Nebraska is clearly more convenient

Here, the public and private factors demonstrate that the District of Nebraska—the location of the defendants' headquarters, witnesses, facilities, and documents—is clearly more convenient than the Eastern District of Texas, which has no specific connection to any party, the accused website, or the evidence concerning plaintiff's infringement allegations.

### 1.    The private interest factors strongly favor transfer

Each private interest factor counsels in favor of transfer to the District of Nebraska. That district will have easier access to the sources of proof, subpoena power over appropriate witnesses, and the cost of witness travel will be minimized. No factor cuts against transfer.

### a.    The sources of proof are primarily located in or near the District of Nebraska

The "sources of proof" factor turns on which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009). In a patent infringement case, the bulk of the relevant evidence usually comes from the accused infringer. *In re Genentech*, 566 F.3d at 1345. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location. *Id.*

Here, all of the likely documents and evidence from the defendants are located in Great West's Nebraska headquarters. IV's allegations of patent infringement are based on the hosting of the Great West portal. Dkt. No. 1, ¶ 19. The servers that implement and host that accused website are hosted in Great West's Nebraska headquarters. Flannery Decl. ¶ 6. All of Great

West's documents and evidence relating to the design, development, hosting, and use of that accused website and those servers are located at the Nebraska headquarters. Flannery Decl. ¶ 7. Moreover, all of the Great West employees who work on the accused portal work in Great West's Nebraska headquarters, so their files will be located there. Flannery Decl. ¶ 5.

Evidence relating to the design of the Great West website will also come from third-party witnesses: former employees of Great West who assisted with the original design and development of the accused website. Those employees are located near Great West's Nebraska headquarters (specifically in Sioux City and Des Moines, Iowa), considerably closer to the Omaha, Nebraska courthouse than to Tyler.

Moreover, the likely sources of proof from IV aren't in the Eastern District of Texas. Documents from IV likely reside in or near Bellevue, Washington or Mountain View, California. Dkt. No. 1, at ¶ 2. These locations are closer to the District of Nebraska (approximately 1,400 each) than to the Eastern District of Texas (approximately 1,700 and 1,600 miles, respectively). Documents from the inventors, to the extent not already collected by IV, are also likely located in Washington state or Northern California. Baxter Decl. ¶ 3. According to IV's website, it maintains no office and has no documents or employees within the Eastern District of Texas. Baxter Decl. ¶ 2.

IV may point to the existence of Great West's office in Arlington to claim that the Eastern District of Texas has easier access to that "source of proof." Not so—Great West's Arlington office isn't a source of proof. No documentary evidence relating to the development and use of the Great West portal is kept in the Arlington office; and the employees who work there were and aren't involved in the development or use of the website. Flannery Decl. ¶ 8. IV's complaint points to Great West's relationships with two insurance agencies and two repair shops

8

within the Eastern District of Texas, but again, no documentary or percipient evidence in this case will come from those agencies, because they have nothing to do with the accused Great West portal. Ponder Decl. ¶¶ 7-8.

Most of the relevant sources of proof in this case are in or near the District of Nebraska, with a few on the West Coast. None are within the Eastern District of Texas. This factor therefore weighs heavily in favor of transfer.

### b.  Important fact witnesses aren't subject to compulsory process here

The second private interest factor, the availability of compulsory process, also weighs in favor of transfer. Great West has identified two non-party witnesses who reside within 100 miles of the Omaha, Nebraska courthouse (and are therefore subject to compulsory process), and who likely have information relevant to this action. These include the former Vice President of Systems Development who directed Great West's information technology efforts during the development of the website, and a former programmer/analyst who participated in its design. Flannery Decl. ¶ 6. Additionally, any additional current or former Great West witnesses with information relevant to the accused website are likely to reside near its Nebraska headquarters, and thus can likely be compelled by the district court in Omaha if necessary.

By contrast, to Great West's knowledge, no likely non-party witnesses reside in the Eastern District of Texas or within 100 miles of the Tyler Courthouse. When some witnesses reside in the transferee district, but none reside in the transferor district, this factor points towards transfer—and substantially so. *In re Genentech*, 566 F.3d at 1345 ("[T]here is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not

9

only slightly.").

The likely non-party witnesses who do not reside in or near the District of Nebraska, such as the patent's inventors and prosecuting attorneys, are located in California and Washington state, not Texas. Therefore, the Eastern District of Texas has no greater power of compulsory process against these witnesses than the District of Nebraska. When there are no witnesses in the transferor venue, the Federal Circuit has repeatedly held that transfer to a venue with *some* witnesses is proper, even if that venue does not have subpoena power over *all* witnesses. *In re Hoffman La-Roche*, 587 F.3d at 1337-38 ("The district court can only compel one potential non-party witness to testify at trial and can only do so by inconveniencing her in having to travel more than 100 miles to attend the trial. . . . [B]ecause the Eastern District of North Carolina does have absolute subpoena power over at least four non-party witnesses, the district court should have considered this factor in favor of transfer."); *In re Genentech*, 566 F.3d at 1345; *In re Apple Inc.*, 581 F. App'x 886, 890 (Fed. Cir. 2014) (unpublished).

### c.    The District of Nebraska is much more convenient for witnesses than this district

When a substantial number of witnesses reside in the transferee district, this factor weighs heavily in favor of transfer. *In re Genentech*, 566 F.3d at 1343; *In re Nintendo*, 589 F.3d at 1199. Furthermore, the court may look to the costs for both party and non-party witnesses to attend trial. *In re Volkswagen AG,* 371 F.3d at 204.

As explained above, Great West has identified five witnesses involved in the design, development, and operation of its accused portal—and all live in or near its Nebraska headquarters. Ponder Decl. ¶ 5-6. Another third party witness lives in Des Moines, Iowa—much closer to the Omaha courthouse in the District of Nebraska than to the Eastern District of Texas. Flannery Decl. ¶ 6. Furthermore, since Great West's management and its employees who are

responsible for operating and maintaining the accused website and portal work at Great West's South Sioux City headquarters and reside nearby, any further witnesses identified are likely to be nearby as well. Ponder Decl. ¶ 4.

The cost of attending a trial in the Eastern District of Texas would be substantial for those witnesses. There are no direct flights from Sioux City, Iowa Airport (the airport closest to South Sioux City, Nebraska) to the Tyler airport. Baxter Decl. ¶ 15(a). Travel from Sioux City, Iowa, South Sioux City, Nebraska, or the surrounding area will necessarily involve at least two layovers—in Chicago and in Dallas—or a layover and a drive from Dallas. Baxter Decl. ¶ 15(b). The travel time from Sioux City to the Tyler airport starts at seven and a half hours. Such a day-long trip has been recognized by the Fifth Circuit as a severe inconvenience to witnesses. *In re Volkswagen AG*, 371 F.3d at 204-05 ("[T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.").

The inconvenience to witnesses in California and Washington is reduced by transferring the case to the District of Nebraska: Alaska Airlines flies direct from Seattle to Omaha, and the travel time from the San Francisco area and Omaha is approximately equal to the travel time from San Francisco to Tyler (both involve a flight layover and more than five hours of travel time, Baxter Decl. ¶ 15(c)-(f)). *See Stambler v. Fifth Third Bancorp*, No. 2:12-cv-00675-JRG, 2013 WL 6730045 (E.D. Tex. Dec. 18, 2013) (transferring case to district where defendant's witnesses resided and only slight additional inconvenience to plaintiff). The wealth of witnesses in the District of Nebraska, and the complete lack of any witnesses in the Eastern District of

11

Texas, shows that the District of Nebraska is a "clearly more convenient" location for this litigation. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."); *In re Hoffman La-Roche*, 587 F.3d at 1337.

### d.    No practical problems arise from transfer

IV can point to no practical problems that will arise if this case is transferred to the District of Nebraska. IV hasn't litigated the '177 Patent previously in this district or in any other, so there is no specialized knowledge here that will make adjudication of the case easier or more efficient. Since Great West is bringing this motion even before filing its answer, it will cause no delay to IV's resolution of the case. And even if delay were likely, it is of no moment to IV, a company whose business is asserting patents, not producing products. *See In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (unpublished) ("Realtime acknowledges that it doesn't make or sell any product that practices the claimed invention. It therefore isn't in need of a quick resolution of this case because its position in the market is threatened."). Finally, IV can't rely on the fact that it filed suit against BITCO concurrently with Great West to hold the litigations here. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) ("Because the cases involve different products with only a single overlapping patent and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial."). IV's allegations against BITCO invoke a different accused website, and will require different discovery and evidence.[2]

### 2.    The public interest factors also weigh in favor of transfer

The District of Nebraska has a strong local interest in adjudicating a case involving a

---

[2] BITCO is concurrently moving to transfer the litigation against it to the Central District of Illinois.

company headquartered in Nebraska, with the accused portal developed and operated there. The remaining public interest factors are neutral in the analysis. Therefore, the public interest factors overall favor transfer.

### a. The District of Nebraska has a strong local interest in adjudicating this case

This case involves a corporate defendant headquartered and operating out of Nebraska. The website accused of infringement was developed and is maintained in Nebraska, and the company and its employees work there and have strong connections with the area. The District of Nebraska has a strong interest in adjudicating an accusation of patent infringement by a local company, based on a website developed and operated locally. This isn't a matter of local bias. Rather, this factor concerns the fact that IV has called the reputation of Great West, and of the individuals who developed and maintain the accused portal, into question by leveling infringement accusations in a publicly available pleading—an accusation and a pleading that IV itself has publicized. *In re Hoffman La-Roche*, 587 F.3d at 1336 (finding local interest in action "call[ing] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that district."); *In re Volkswagen of Am., Inc.*, 545 F.3d at 317-18 (finding local interest favored transfer to district where acts giving rise to suit took place); *see also* Baxter Decl. ¶ 16 (printout from IV's website announcing that "Intellectual Ventures Files Second Infringement Action Against Old Republic," with links to the complaints). IV can't rely on an assertion that the website is viewed in Texas, or that Great West has customers in Texas—such an assertion creates no more interest in the Eastern District of Texas than in any other district in the United States, and thus doesn't cut against venue transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d at 317-18; *In re TS Tech USA Corp.*, 551 F.3d at 1321.

**b.    There are no issues of court congestion; indeed, the transferee forum is less congested**

Court congestion is the "most speculative" of the transfer factors, and doesn't bear heavily on the analysis. *In re Genentech*, 566 F.3d at 1347. Nevertheless, the District of Nebraska isn't a congested district and offers comparable time-to-trial as the Eastern District of Texas. The most recent Federal Judicial Caseload Statistics found that the median time to trial in the District of Nebraska was 22.4 months, compared to 26.1 months in the Eastern District of Texas. Baxter Decl. ¶ 14. And the District of Nebraska had just 564 pending civil cases pending at last measurement, with two district judges and three senior judges presiding. Baxter Decl. ¶ 13. That is a per-judge civil caseload of 121 cases per judge, if each judge took the same number of cases. By contrast, the Eastern District of Texas had 3,794 civil cases pending, with eight district judges and one senior judge presiding—a per-judge civil caseload of 421 cases per judge, if each judge took the same number of civil cases. *Id.* Given the statistics, court congestion doesn't weigh against transfer. If anything, it points towards transfer.

**c.    Both districts are familiar with the governing law, and there is no conflict of foreign law**

This federal question case is substantively governed exclusively by federal law and in particular by federal patent law. Both the Eastern District of Texas and the District of Nebraska are capable of applying patent law to infringement claims. *See In re TS Techs. USA Corp.*, 551 F.3d at 1320. Accordingly, this public interest factor is neutral. And this case involves only United States companies, patents, products, and witnesses. There is no concern of a conflict of foreign laws, and that public interest factor is neutral as well.

/

/

/

14

IV.    **Conclusion**

This litigation isn't tied in any specific way to this district. IV filed the case here, but that isn't enough. A significant number of identified witnesses work in Great West's headquarters within the transferee forum, and reside nearby. And, since all the relevant Great West employees work there, if there are more witnesses are identified, they'll likely also work nearby. By contrast, no witnesses, no evidence, and no past litigation of the patent-in-suit weighs in favor of litigating here. "With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is *clearly* more convenient." *In re Toyota Motor Corp.*, 747 F.3d at 1341.

Great West respectfully requests that this Court transfer this case to the District of Nebraska.


Dated: March 13, 2015                      */s/ Vernon M. Winters*
                                          **Vernon M. Winters**
                                          California State Bar No. 130128
                                          vwinters@sidley.com
                                          SIDLEY AUSTIN LLP
                                          555 California Street, Suite 2000
                                          San Francisco, CA 94104
                                          Telephone:    415.772.1200
                                          Facsimile:    415.772.7400

                                          **David T. DeZern**
                                          Texas State Bar No. 24059677
                                          ddezern@sidley.com
                                          SIDLEY AUSTIN LLP
                                          2001 Ross Ave., Suite 3600
                                          Dallas, TX 75201
                                          Telephone:    214.981.3300
                                          Facsimile:    214.981.3400

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on March 13, 2015.

*/s/  Vernon M. Winters*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that the parties met and conferred with respect to this motion as required by Local Rule CV-7(h) via teleconference on March 12, 2015.  Counsel for Great West Casualty Company ("Great West") were Vern Winters and David DeZern.  Intellectual Ventures II LLC ("IV") was represented by Christian Hurt, Ross Leonoudakis, and Kirk Voss.  Counsel for defendant explained the relief sought herein, but IV would not agree.  Accordingly, the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.  Therefore, this motion is opposed.


    */s/ David T. DeZern*                    */s/ Vernon M.  Winters*

David T. DeZern                                   Vernon M. Winters

Local Counsel for Great West              Lead Counsel for Great West